IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 22-cv-00233-RM-MDB

RONALD G. COUCH,

    Plaintiff,

v.

JASON MIKESELL, Sheriff, in his official and individual capacities,

    Defendant.

---

**ORDER**

---

This employment case is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 56.) The Motion has been briefed (ECF Nos. 64, 71) and is granted for the reasons below.

**I.  LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a

matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

Where the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). If the moving party demonstrates that the nonmoving party's evidence is insufficient to establish an essential element of his claim, the burden shifts to him to set forth specific facts showing that there is a genuine issue for trial. *See id.* If he fails to make a showing sufficient to establish the existence of an element, summary judgment must be entered in favor of the moving party. *See id.*

**II.     BACKGROUND**

Plaintiff was hired as Commander of the Operations Division of the Teller County Sheriff's Office in 2017, where he reported to Defendant, the sheriff. (ECF No. 72, ¶¶ 1, 4.) Due to concerns about Plaintiff's mood swings, erratic behavior, and smelling of alcohol in work-related settings, on June 21, 2021, Defendant directed Plaintiff to attend a fitness-for-duty

evaluation with a police psychologist the following day. (*Id.* at ¶¶ 12, 13, 18.) Rather than attend the evaluation, Plaintiff declared he was retiring. (*Id.* at ¶¶ 19, 27, 28.)

Plaintiff filed this lawsuit in January 2022, asserting that he was constructively discharged because he brought issues of public concern to Defendant's attention. (ECF No. 64 at 2.) He asserts claims for (1) violation of Colo. Rev. Stat. § 24-50.5-101 (whistleblower claim), (2) violation of § 13-21-131 (state civil rights claim), (3) violation of the First Amendment under 42 U.S.C. § 1983 (retaliation claim), (4) violation of the Fourteenth Amendment under § 1983 (procedural due process claim), (5) violation of the Fourteenth Amendment under § 1983 (substantive due process claim), and (6) termination in violation of public policy (public policy claim).

### III.   ANALYSIS

#### A.   Whistleblower Claim

Defendant first contends that Plaintiff cannot proceed under the Colorado Whistleblower Act because he was not a state employee under the statute. *See* § 24-50.50-101. The Court agrees.

Colorado's whistleblower statute is intended to promote the policy that "state employees should be encouraged to disclose information on actions of state agencies that are not in the public interest" without facing "disciplinary measures or harassment by any public official." § 24-50.5-101(1). The statute defines an employee as "any person employed by a state agency," § 24-50.5-102(3), and a state agency as "any board, commission, department, division, section, or other agency of the executive, legislative, or judicial branch of state government," § 24-50.5-102(4).

Based on these definitions, nothing in the statute expressly supports Plaintiff's position that the Teller County Sheriff's Office is a state agency or that he was a state employee. Nor does Plaintiff cite any case law supporting his broad interpretation of the whistleblower statute. To the contrary, in *Clark-Wine v. City of Colorado Springs*, 556 F. Supp. 2d 1238, 1249 (D. Colo. 2008), the court determined that because "the plain terms of the whistleblower statute apply only to state employees," it was not intended to cover employees of other governmental entities, such as the City of Colorado Springs.

Plaintiff's citation to *Elder v. Williams*, 477 P.3d 694, 702 (Colo. 2020), for the proposition that county sheriff's offices are state agencies under title 24 of the Colorado Revised Statutes, is unavailing. *Elder* involved the application of Colo. Rev. Stat. § 24-34-405(8)(g) in the context of a discrimination claim brought under the Colorado Anti-Discrimination Act ("CADA"). *Id.* at 701. There, the Colorado Supreme Court held that "'the state,' as used in subsection 24-34-405(8)(g), includes both the state of Colorado and any state agency or political subdivision." *Id.* at 702. However, the court's decision is rooted in the language of a neighboring subsection of the statute, its legislative history, and the policy goals behind CADA. *See id.* The decision does not support Plaintiff's position that "the state" also must be so broadly defined in the whistleblower statute or throughout title 24.

Based on the plain language of the whistleblower statute, the rationale of *Clark-Wine*, and the absence of authority supporting Plaintiff's position, the finds that Plaintiff's reliance on the whistleblower statute is misplaced in the context of this case and that Defendant is entitled to summary judgment on this claim.

4

### B. State Civil Rights Claim

Plaintiff's state civil rights claim is based on a purported violation Colo. Rev. Stat. § 13-21-131, which provides a remedy when police officers deprive individuals of their rights under the Colorado Constitution. Citing the dearth of case law interpreting this relatively new statute, which went into effect in 2020, Defendant contends that First Amendment retaliation cases brought under § 1983 provide an appropriate framework for assessing Plaintiff's claim.

Plaintiff objects to this approach on the grounds that the Colorado Constitution provides greater protection for free speech than does the First Amendment, *see Bock v. Westminster Mall Co.*, 819 P.2d 55, 59 (Colo. 1991), but fails to show he would be prejudiced under Defendant's proposed approach. He has not provided any argument as to how Defendant could have deprived him of his rights that are specific to the Colorado Constitution or explained how Defendant's proposed approach to analyzing this claim is inadequate to protect his rights. As a result, under the circumstances presented, the Court discerns no prejudice to Plaintiff or any other reason to reject Defendant's proposed approach.

Moreover, Plaintiff has not even attempted to meet his burden of identifying specific facts showing there is a genuine issue for trial on this claim. *See Tesone*, 942 F.3d at 994. Accordingly, the Court concludes that its analysis of Plaintiff's First Amendment retaliation claim in the following section applies equally to his state civil rights claim and that Defendant is entitled to summary judgment on both.

### C. Retaliation Claim

The Court analyzes Plaintiff's First Amendment retaliation claim (and state civil rights claim) using the five-step approach based on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and

*Pickering v. Board of Education*, 391 U.S. 563 (1968). *See Lauck v. Campbell Cty.*, 627 F.3d 805, 814 (10th Cir. 2010). First, the Court must determine whether Plaintiff's speech was pursuant to his official duties. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007). If so, "there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* (quotation omitted). If not, the Court must determine whether Plaintiff's speech involved a matter of public concern. *Id.* If it does, the Court must determine whether Plaintiff's interest in commenting on these issues outweighs Defendant's interest as an employer. *Id.* at 1203. These three steps are typically, though not always, questions of law, which the Court resolves. *See Seifert v. Unified Gov't of Wyandotte Cty.*, 779 F.3d 1141, 1151 (10th Cir. 2015).

If the first three steps are satisfied, the Court must determine whether Plaintiff has shown that his speech was a substantial or motivating factor in a detrimental employment decision. *Lauck*, 627 F.3d at 814. If so, the Court must determine whether Defendant has demonstrated that it would have taken the same action against Plaintiff even in the absence of the protected speech. *Id.* The last two steps are typically questions of fact, but they may be resolved on a motion for summary judgment when appropriate. *See, e.g.*, *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1297 (10th Cir. 2013) (affirming summary judgment at the fourth step because the plaintiff's evidence and arguments were insufficient to raise a genuine issue that his employer had a nonretaliatory reason for firing him); *Meyers v. E. Okla. Cty. Tech. Ctr.*, 776 F.3d 1201, 1206 (10th Cir. 2015) (affirming summary judgment at the fifth step because any reasonable jury would have found the plaintiff would have been fired even without a retaliatory motive).

In the Amended Complaint, Plaintiff alleges he voiced his concerns about four matters of public concern:

a. Plaintiff told [Defendant] that [a lieutenant] is a bully who was creating a hostile work environment for his employees;

b. Plaintiff informed [Defendant] via email that someone within the County government forged a Board of County Commissioners Resolution and presented it to influence other public officials at a public meeting;

c. Plaintiff told others that [Defendant] was diverting county resources by directing Teller County Sheriff's Office deputies to perform work for his private company, iXero; [and]

d. Plaintiff informed [Defendant], who did not know, or appear to care, about any of the concerning facts surrounding [a recent hiree's] background check.

(ECF No. 10, ¶ 66.) The same alleged disclosures form the basis for Plaintiff's whistleblower and state civil rights claims. (*Id.* at ¶¶ 46, 58.)

Defendant argues that Plaintiff's retaliation claim fails because his speech on these topics was pursuant to his official duties and because has not shown his alleged disclosures were the motivating factor behind a detrimental employment decision. The Court agrees with both arguments.

In his Response, Plaintiff contends that he disclosed his concerns about the recent hiree to Defendant in a personal phone call during which Plaintiff explained, "I don't want it to be official because I'm trying to protect you." (ECF No. 64 at 7.) He also contends he made an unspecified disclosure concerning a "Q-document" to a county commissioner, asking the commissioner to "keep it in confidence" and to "use only his personal cell number." (*Id.* at 8.)

But in neither instance has Plaintiff adduced evidence giving rise to a reasonable inference that his disclosures—which, on their face, appear to be directly related to his

7

employment with the Sheriff's Office—were not made pursuant to his official duties. It is well established that "speech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation." *Brammer-Hoelter*, 492 F.3d at 1203. And the Court is not persuaded that these disclosures were rendered "unofficial" for the purpose of stating a retaliation claim merely because Plaintiff expressed an expectation or hope that they would be kept confidential. Plaintiff cites no authority to the contrary.

Further, Plaintiff has not shown his alleged disclosures were a motivating factor behind any adverse employment actions he experienced. In addition to citing Defendant's directive that he travel immediately to Denver, which was two hours away, to undergo a psychological evaluation, Plaintiff cites several other conditions that allegedly contributed to his constructive discharge and created an "intolerable employment situation," including that his command authority was given to a subordinate officer, his subordinates routinely ignored his orders, Defendant lied to him about a phone call they had, and false accusations were made against him at Defendant's direction.[1] (ECF No. 64 at 8-9.)

However, a plaintiff bears a substantial burden in establishing a constructive discharge. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 980 (10th Cir. 2008). "A constructive discharge occurs only when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Id.* (quotation omitted). Plaintiff's allegations fall well short of meeting this standard.

---

[1] In arguing that he was constructively discharged, Plaintiff appears to concede he was not actually discharged. In any event, he has not denied that he made statements indicating he was retiring and has adduced no evidence refuting Defendant's contention that he voluntarily resigned. (*See* ECF No. 72, ¶¶ 27, 28.)

First, with respect to the fitness-for-duty evaluation, there is no evidence the directive from Defendant affected Plaintiff's salary or benefits (*see* ECF No. 72, ¶ 11), and courts have generally rejected the argument that a fitness-for-duty examination, by itself, constitutes materially adverse employment action, *see Sensroth v. City of Wichita*, 548 F. Supp. 2d 1203, 1211 (D. Kan. 2008) (citing cases). In addition, with respect to all the conditions above taken together, Plaintiff fails to explain how they—individually or collectively—rise to the level of an adverse employment action, much less that they give rise to an inference that no reasonable person would endure such conditions of employment. *See Sensroth*, F. Supp. 2d at 1210 (noting that the significance of a given act of retaliation often depends on the circumstances). "[A]n employee cannot survive summary judgment merely by producing evidence showing that working conditions were difficult or unpleasant." *Fischer*, 525 F.3d at 981. Under the circumstances, the Court finds Plaintiff's conclusory assertions about the conditions of his employment are insufficient to show that his workplace became so intolerable that a reasonable person in his position would have felt forced to resign or that he was otherwise subjected to any adverse employment action for purpose of stating a retaliation claim.

In the absence of any showing that Plaintiff's disclosures were not made pursuant to his official duties or that he experienced an adverse employment action, the Court concludes Defendant is entitled to summary judgment on Plaintiff's retaliation and state civil rights claims.

D.    **Procedural and Substantive Due Process Claims**

In response to Defendant's arguments regarding Plaintiff's Fourteenth Amendment claims, Plaintiff concedes to the dismissal of these claims. (*See* ECF No. 64 at 10.)

9

### E. Public Policy Claim

Plaintiff's final claim is that he was terminated in violation of public policy following his disclosures, referenced above, to Defendant and a county commissioner. Again, the Court finds there is no genuine issue of material fact to support this claim.

"[T]he public policy exception allows at-will employees to pursue claims for wrongful discharge if they allege that they were discharged because they engaged in conduct that is protected or encouraged as a matter of public policy." *Kearl v. Portage Env't, Inc.*, 205 P.3d 496, 498-99 (Colo. App. 2008). But the Court has already determined that Plaintiff has not adduced sufficient evidence to show he was constructively discharged. Rather, the record establishes that he chose the resign rather than submit to Defendant's directive that he undergo an evaluation. Further, he has not shown or even alleged that he was "directed to perform an illegal act as part of [his] work related duties" or "prohibited . . . from performing a public duty or exercising an important job-related right or privilege." *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992). Therefore, this claim also fails.

## IV. CONCLUSION

The motion for summary judgment (ECF No. 56) is GRANTED, and the Clerk is directed to CLOSE the case.

DATED this 30th day of October, 2024.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge